IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORA CANDELARIA, KIMANI
SINGLETON and all others similarly situated
Under 29 USC § 216(b),

      Plaintiffs,

vs.                                                                Civ. No. 17-404 KG/SMV

HEALTH CARE SERVICE CORPORATION,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon a February 26, 2020, letter by *pro se* Medical

Management Specialists (MMS Objectors) to the Clerk of the Court.[1]  (Doc. 63). The Court

construes the letter as an Objection to the proposed class action settlement in this case. Plaintiffs

and Defendant responded to the Objection on March 19, 2020, arguing that the Court should

overrule the Objection.  (Doc. 65).  Having considered the Objection and the response as well as

the pertinent law, the Court overrules the Objection and will reset the final settlement approval

hearing.

---

[1] The Court notes that although it must liberally construe *pro se* filings, *pro se* litigants must still comply with the Federal Rules of Civil Procedure.  *See, e.g., See Hall v. Witteman,* 584 F.3d 859, 863 (10th Cir. 2009) (finding that plaintiff's "*pro se* status entitles him to a liberal construction of his pleadings"); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994), *cert. denied*, 514 U.S. 1048 (1995) (noting that while Tenth Circuit "liberally construe[s] *pro se* pleadings, an appellant's *pro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure").  Moreover, the Court is not obliged to craft legal theories for *pro se* litigants or to supply factual allegations to support *pro se* litigants' claims for relief. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that "we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant").

*I. Background*

This is a class action lawsuit filed in April 2017. Plaintiffs, Medical Management Employees (MMEs) employed by Defendant, sued Defendant for misclassifying MMEs as exempt from overtime pay and not paying MMEs for overtime as required under the New Mexico Minimum Wage Act, the Illinois Minimum Wage Law, and the Fair Labor Standards Act (FLSA). (Doc. 25) at ¶¶ 1 and 4. Plaintiffs defined the class in their First Amended Class and Collective Action Complaint (First Amended Complaint) as follows:

> Defendant's current and former non-supervisory MMEs who were paid a salary, who worked more than 40 hours in one or more workweeks over the past three years and whose job duties include Data Collection, Data Entry, Care Utilization, Plan Education, Care Coordination, or other similar duties. This definition specifically includes, without limitation, such job titles as "care coordinator," "member care coordinator," "case manager," "medical management specialist," "UM/CM coordinator," "behavioral health coordinator," "medical social worker," "utilization review nurse," "care management specialist," and other job titles performing similar duties.

*Id.* at ¶ 7.

In July 2019, the parties notified the Court that they had "reached an agreement in principle to resolve all wage-hour claims asserted in this lawsuit." (Doc. 56). In reaching a proposed settlement, Plaintiffs narrowed the class to persons with "non-career path" job titles which do not require a registered nurse (RN) licensure or advanced specialized education.[2] (Doc. 65) at 5-6; (Doc. 65-1). Consequently, the Settlement Class Members are not presumptively exempt from overtime pay under the FLSA's learned professional exemption.

---

[2] The Settlement Class Members, at a minimum, must possess "4 years' health, social services or community advocacy experience," "4 years of experience in the healthcare industry," "2 years of customer service experience communicating with providers, subscribers, and/or other external customers," or "3 years managed care systems experience." (Doc. 65-1) at 2, 5, 7 and 9.

(Doc. 65) at 6; *see also* 29 C.F.R. § 541.301.[3]   The "non-career path" job titles held by the

Settlement Class Members are Community Health Coordinator, Family Health Assistant,

Managed Care Program Coordinator, and Member Care Coordinator.  (Doc. 65) at 6; *see also*

(Doc. 65-1).

     In November 2019, Plaintiffs filed "Plaintiffs' Unopposed Motion for Preliminary

Approval of Class and Collective Action Settlement."  (Doc. 61).  On December 5, 2019, the

Court granted Plaintiffs' unopposed motion and entered an "Order Preliminarily Approving

Settlement Agreement," which set a hearing on March 19, 2020, to determine whether to finally

approve the proposed settlement.  (Doc. 62).  The Court noted that it would hear any objections

to the settlement by the Settlement Class Members at the hearing.  *Id.* at ¶ 15.

     On February 26, 2020, 22 MMS Objectors filed a letter objecting to the proposed

settlement.  The MMS Objectors complain that they have been unfairly omitted from the

Settlement Class although their job duties are consistent with Member Care Coordinators and

Defendant has also not paid the MMS Objectors for overtime work.  The Court notes that 21 of

the MMS Objectors have RN licensures and one has a master's social worker licensure.  (Doc.

63) at 3-6; (Doc. 65-3).  In fact, unlike the job titles held by the Settlement Class Members, an

MMS is required to have an RN licensure, social work licensure, or professional counselor

---

[3] Employees meet the learned professional exemption if they perform work in a field of science that requires "advanced knowledge… customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.301(a).  "Advanced knowledge cannot be attained at the high school level."  *Id.* at § 541.301(b).  Also, "[t]he best prima facie evidence that an employee meets [the customarily acquired by a prolonged course of specialized intellectual instruction] requirement is possession of the appropriate academic degree."  *Id.* at § 541.301(d). Notably, "[r]egistered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption."  *Id.* at § 541.301(e)(2).

licensure.  (Doc. 65-2).  Moreover, unlike the Settlement Class Members, the MMS job title

provides a "career path."  *Id.*

Upon receiving the MMS Objectors' letter, the Court vacated the final settlement

approval hearing on March 5, 2020.  (Doc. 64).  Thereafter, on March 19, 2020, Plaintiffs and

Defendant responded to the Objection.  (Doc. 65).

*II.  Discussion*

Plaintiffs and Defendant argue that the Court should overrule the Objection because the

MMS Objectors lack standing to object to the proposed settlement and the parties appropriately

narrowed the Settlement Class to four job titles that did not include the MMS job title.  The

Court addresses the standing issue first because it concerns the Court's jurisdiction to hear the

Objection.

Article III of the United States Constitution limits federal court jurisdiction to "cases"

and "controversies."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24,

2016).  To present an Article III case or controversy, the MMS Objectors must establish standing

to bring their Objection.  *Id.* (citations omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555,

561 (1992) (stating that "party invoking federal jurisdiction bears the burden of establishing"

standing).

The Court views the standing issue in this case in two different ways.  First, if the MMS

Objectors are not members of the Settlement Class, do they have standing to object to a proposed

class action settlement as non-class members?  Second, if the MMS Objectors were class

members as defined in the First Amended Complaint, do they have standing to object to the

proposed class action settlement as non-settling parties?

*A. Whether the MMS Objectors, as Non-Class Members, Have Standing to Object to the Proposed Class Action Settlement*

Federal Rule of Civil Procedure 23(e)(5)(A) provides that only "class member[s] may object to" a proposed class action settlement. Hence, non-class members, like the MMS Objectors, "have no standing to object" to the proposed settlement. *Heller v. Quovadx, Inc.*, 245 Fed. Appx. 839, 842 (10th Cir. 2007) (quoting *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989)). Instead, "[i]nterjection of the opposing views of non-class members … should proceed via intervention under Rule 24." *Id.* (quoting *Gould*, 883 F.2d at 284). The Court observes that "[c]ases involving non-class members' attempts to intervene and/or object to settlements are few, and the courts usually reject the outsiders' attempts to enter the litigation during the settlement phase." *Gould*, 883 F.2d at 285. Nonetheless, the Court will examine whether the MMS Objectors can intervene in order to object to the proposed settlement. Federal Rule of Civil Procedure 24 allows for either intervention of right or permissive intervention.

*1. Intervention of Right*

"[A] nonparty seeking to intervene as of right must establish [the following elements:] (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019); *see also* Fed. R. Civ. P. 24(a)(2). With respect to the second element, the nonparty must show a "direct, substantial, and legally protectable" interest in the action. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001). A protectable interest is one that "would be 'impeded by the disposition of the action.'" *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007), *abrogated on other grounds by Western Energy Alliance v. Zinke*, 877 F.3d 1157 (10th Cir. 2017) (citation omitted). Although "[t]he threshold for finding the requisite legally protected

5

interest is not high," a nonparty "may not 'raise interests or issues that fall outside of the issues raised' by the parties." *Goodall v. Williams*, 2018 WL 2008849, at *4 (D. Colo.) (citations omitted). Moreover, a nonparty "who cannot demonstrate that they have a protectable interest in the litigation will not be able to satisfy the impairment of interest requirement," the third element. *Id.* "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *San Juan Cty.*, 503 F.3d at 1193.

In this case, the MMS Objectors, who are "career path" employees with advanced specialized education, "do not have an interest or property of which the class litigation will dispose," namely overtime claims by "non-career path" employees who are not required to possess an advanced specialized education. *Lowery v. City of Albuquerque*, 2012 WL 1378528, at *12 (D.N.M.). In other words, the MMS "Objectors do not seek to protect their own property, their allotment from an award or settlement, or any other cognizable legal right or interest. They are simply potential plaintiffs who have yet to litigate any claims." *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1310-11 and n.6 (11th Cir. 2004) (denying intervention of right where Objectors "claim[ed] they fit the class definition until it was redrafted to exclude them at the time of class certification and settlement"). Put another way, the proposed settlement will not impede the MMS Objectors' interest in overtime pay, because the MMS Objectors' interest "fall[s] outside of the issues raised by the" Settlement Class Members. *Goodall*, 2018 WL 2008849 at *4. The MMS Objectors, therefore, have not demonstrated that they have a "direct, substantial, and legally protectable" interest in the proposed settlement or a potential impairment of such an interest. *See Utah Ass'n of Counties*, 255 F.3d at 1251. Having failed to meet the second and third elements of an intervention of right, the Court concludes that the MMS Objectors are not entitled to intervene as of right.

6

### 2. *Permissive Intervention*

Permissive intervention provides that, on timely motion, the Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to allow a permissive intervention, "the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As non-class members, the MMS Objectors have no right to a permissive intervention "because their claims do not share common questions of law or fact with the class action." *Lowery*, 2012 WL 1378528, at *12. Although both the MMS Objectors and the Settlement Class Members contend that Defendant did not pay them overtime as required by law, an important distinction exists between the MMS Objectors and the Settlement Class Members. Specifically, the higher education requirements for the MMS Objectors raises the question of whether the learned professional exemption applies to the MMS Objectors, an issue not applicable to the Settlement Class Members, whose job titles have lower education requirements not affected by the learned professional exemption. Moreover, adding the MMS Objectors' separate and distinct claims to the proposed settlement would unduly complicate and delay this lawsuit which has been pending since April 2017. For the above reasons, the Court declines to exercise its discretion to allow a permissive intervention.

*B.  Whether the MMS Objectors, as Non-Settling Parties, Have Standing to Object to the Proposed Class Action Settlement*

In the context of a class action settlement, "non-settling [parties] generally have no standing to complain about a settlement, since they are not members of the settling class."[4]  *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1102 (10th Cir. 2001) (citations omitted).  "This rule advances the policy of encouraging the voluntary settlement of lawsuits."  *Id.* (omitting citation).  Nonetheless, "[c]ourts have recognized a limited exception to this rule where nonsettling parties can demonstrate they are 'prejudiced' by a settlement."  *Id.*

"'[P]rejudice' in this context means 'plain legal prejudice'…."  *Id.* (citations omitted).  Plain legal prejudice occurs when "the settlement strips the party of a legal claim or cause of action, such as a cross-claim or the right to present relevant evidence at trial."  *Id* at 1102-03.  Also, plain legal prejudice "has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification."  *Id.* at 1102 (citation omitted).  On the other hand, plain legal prejudice does not occur when a settlement "does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties" or when a non-settling party merely alleges "injury in fact or tactical disadvantage" resulting from a settlement.  *Id.* at 1103 (italics omitted).

As non-settling parties, the MMS Objectors will not be bound by the proposed settlement.  Moreover, the proposed settlement will not strip the MMS Objectors of any legal claim or cause of action nor will the proposed settlement interfere with their contract rights or contractual remedies.  Accordingly, the MMS Objectors can bring their claims against Defendant in a separate lawsuit.  Although it may seem easier for the MMS Objectors to simply include

---

[4] The Court notes "that the broad language of a complaint in a class action lawsuit does not vest in putative class members a right to be part of the class ultimately certified by the District Court."  *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000).

their claims in the proposed settlement, such a tactical reason for objecting to the proposed

settlement does not amount to plain legal prejudice.  In sum, the MMS Objectors have not shown

plain legal prejudice.  Therefore, the MMS Objectors do not have standing, as non-settling

parties, to object to the proposed settlement.

*C. Conclusion*

Having ruled that the MMS Objectors lack standing and cannot intervene in this matter,

the Court lacks jurisdiction to hear the Objection.[5]  For this reason, the Court must overrule the

Objection.

IT IS ORDERED that

1.  the February 26, 2020, Objection (Doc. 63) is overruled; and

2.  the final settlement approval hearing will be reset by a separate notice of hearing.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Lacking jurisdiction to hear the Objection, the Court need not address the assertion by Plaintiffs
and Defendant's that they properly narrowed the class.

9