# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **NORA CANDELARIA, KIMANI SINGLETON and all others similarly situated under 29 USC § 216(b),** | **Case No.** 2:17-cv-404-KG-SMV |
| *Plaintiffs*, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| v. | |
| **HEALTH CARE SERVICE CORPORATION,** | |
| *Defendant*. | |

### STIPULATED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION REGARDING JOINT MOTION FOR INTERIM/FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Before the Court is the Joint Motion for Interim/Final Approval of Class and Collective Action Settlement. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the Honorable District Judge Gonzales referred this matter to me for a recommended disposition. ECF No. 68. The Court held a final fairness hearing on September 14, 2020. ECF No. 75. Having reviewed the parties' submissions and heard the arguments of counsel, I recommend that Judge Gonzales approve the proposed class action settlement as follows.

**I.   INTRODUCTION**

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class/Collective Action Settlement on November 22, 2019. ECF No. 61. On December 5, 2019, the Court granted that Motion. After the Court granted preliminary approval and notice was disseminated, no objections were raised by any class member and only one class member excluded herself. On September 14, 2020, the Court held the final fairness hearing regarding the parties' proposed class

action settlement.  ECF No.75.  The primary issues are: (i) whether the proposed settlement is fair and reasonable; (ii) whether the incentive award to the named plaintiffs are reasonable; (iii) whether the requested attorneys' fee award of 35% of the gross settlement fund, in addition to litigation expenses and costs, and third-party administrator costs, is reasonable; and (iv) whether this Court should maintain the confidentiality of the parties' proposed settlement agreement, as jointly requested and briefed by the parties.

Having reviewed the terms of the settlement, I recommend that the settlement agreement be approved as written and that: (1) the parties' Rule 23 class settlement and Fair Labor Standards Act settlement be approved; (2) the incentive award to the Named Plaintiffs be approved; (3) the attorneys' fees and other costs be approved; and (4) the parties be permitted to maintain the confidentiality of the settlement agreement under seal.

## II.     FINDINGS

### Background

This action was filed on April 3, 2017.  (ECF No. 1).  Plaintiff Nora Candelaria filed the lawsuit to recover alleged unpaid overtime wages under both federal and New Mexico state law. *Id.*  Kimani Singleton joined as a Named Plaintiff on September 7, 2017, when claims under Illinois state law were added.  (ECF No. 25).  The case was filed as a collective action under the Fair Labor Standards Act and as a Rule 23 class action for state wage law claims.  *Id.*  Plaintiffs allege that they were salaried workers who worked more than 40 hours per week without receiving overtime pay.  *Id.*  Defendant denies that any of the Plaintiffs or members of the Settlement Class were improperly classified and denies that there is any evidence of a willful violation.  (ECF No. 26).

Plaintiffs have vigorously pursued their personal claims as well as the claims of the class. The Court held an initial scheduling conference on May 15, 2017. (ECF. No. 7). The scheduling order that resulted set a deadline for Plaintiffs to file a Motion for Conditional certification pursuant to the FLSA. As the Federal Rules direct, the Parties discussed the possibility of settlement very early in the litigation. The Parties agreed to engage in settlement talks, but only after a substantial exchange of information.

The Parties informally exchanged information about the nature of the work performed by the potential class members. The Parties spent several months negotiating over which positions would be included in the Settlement Class. Ultimately, the Parties defined the class of individuals to be included in the Settlement Agreement as:

> The "Settlement Class" includes the 579 individuals who are also identified on Exhibit A [to the Settlement Agreement] by coded identification number. The Settlement Class is comprised of individuals who worked in New Mexico ("New Mexico Class"), individuals who worked in Illinois ("Illinois Class"), and individuals who worked in states other than New Mexico and Illinois ("FLSA Class"). The Settlement Class is comprised of individuals who worked at some point between April 3, 2014, and the present. The FLSA Class is limited to individuals working between April 3, 2015, and the present.

**Negotiated Settlement**

After the Parties agreed on the scope of the class, they engaged in an informal exchange of information to estimate the alleged damages. Defendant provided detailed payroll and attendance records for the class members to Plaintiffs. Both Parties created damage models for use at mediation. On February 13, 2019, the Parties mediated the case in Chicago, Illinois with the assistance of Michael Dickstein. Mr. Dickstein is an accomplished mediator and over the last 10 years has been one of a handful of mediators to concentrate on wage and hour litigation. During the mediation, the Parties agreed to further refine the damage models, and the mediator

adjourned the mediation. The Parties had several lengthy teleconferences to identify differences in the two models and to reach agreement on the different variables in the models. After months of working on the damage models, the Parties were able to resume negotiations and resolve the matter.

### Preliminary Approval

On December 5, 2019, the Court granted preliminary approval of the Settlement Agreement in this case. (ECF No. 62). On January 17, 2020, Notice Packets were sent to the class members. The Notice informed them that the matter had been resolved through settlement, the approximate amount of funds they could receive by returning the opt-in or claim form, and how to exclude themselves or object. The Third-Party Administrator ("Analytics") processed the names and addresses of the Settlement Class Members and mailed the approved notice forms to the most current mailing address of the 597 Settlement Class Members via USPS First Class Mail. (ECF No. 74-1). If a Class Member's Notice Packet was returned by the USPS as undeliverable and without a forwarding address, Analytics performed an advanced address search on the addresses by using Experian, a reputable research tool. *Id.* Analytics used the Class Member's name, previous address, and Social Security Number to locate a current address. *Id.* Thirty-five (35) Notice Packets were returned to Analytics as undeliverable by USPS. *Id.* From the address research, Analytics located twenty-two (22) updated addresses and the Notice Packets were mailed to the updated addresses. *Id.* Three Notice Packets were again returned as undeliverable after the address update. *Id.* In addition, Analytics promptly mailed the Notice Packet to updated addresses provided by USPS, Class Counsel, and Class Members. Only sixteen (16) out of 597 Notice Packets mailed (2.7%) were ultimately undeliverable. *Id.* As of August 28, 2020, a total of 351 individuals had valid and timely claims. *Id.*

In response to the settlement notice, only one individual excluded herself from the settlement, and there were no objectors from Settlement Class Members. *Id.* On February 20, 2020, a *pro se* letter was filed with the Court concerning a group of individuals who sought to object to the settlement because they were not included in the Settlement Class. On March 5, 2020, the Court also vacated the initial setting for the final approval hearing. (ECF No. 64). The Court requested that the Parties respond to the purported objection by March 19, 2020, which they did. (ECF No. 63 and 65). On July 8, 2020, the Court issued an Order finding that the group of pro se individuals did not have standing to object to the settlement. (ECF No. 67).

### III.     CONCLUSIONS AND RECOMMENDED DISPOSITION

**The Settlement is Fair, Reasonable, and Adequate**

Under Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval." Rule 23(e) also dictates that "the court may approve [a settlement agreement] only after a hearing, and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In deciding whether to approve a class settlement, the Court considers whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable." *Tennille v. Western Union Co.,* 785 F.3d 422, 434 (10th Cir. 2015) (quoting *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.),* 354 F.3d 1246, 1266 (10th Cir. 2004)).

The settlement amount is fair, reasonable, and adequate in view of the claims presented and the risks associated with litigation.

I find the class counsel and the settlement class representatives have fairly and adequately represented and protected the interests of the settlement class for purposes of entering into the settlement. I believe the hearing and the evidence before the Court establish that investigation conducted to date is sufficient for the parties to have the information they need to act intelligently in entering into the agreement, and that the agreement is the result of extensive, good faith, arm's length negotiation between the parties. The settlement negotiations, both with and without the use of an experienced wage and hour mediator, were at arm's length with the parties vigorously supporting their positions and using objective data where available so factual disputes were minimized. Counsel for both sides are experienced and capable lawyers whose recommendation of approval has been given due weight. There is no evidence of collusion between the parties or their counsel. Consequently, the settlement was fairly and honestly negotiated by counsel and the parties.

Serious questions of law and fact exist, placing the ultimate outcome of this litigation in doubt. One ever-present risk was the possibility that neither the collective action under the FLSA nor the class claims under the Illinois Minimum Wage Law ("IMWL") or the New Mexico Minimum Wage Act ("NMMWA") would be certified and remain certified through trial. The parties would have faced a long arduous process of litigating myriad individual claims which would most likely have taken months, if not years, and would have cost thousands, if not hundreds of thousands of dollars. Moreover, the parties vehemently disagreed concerning the number of overtime hours allegedly worked by the class members, which ran the risk that an award might be much less than the amount obtained in the settlement process. Finally, and more significantly, given that the claims were predicated on whether or not the class members were

exempt from the overtime requirements under state and federal law, the class members faced the possibility of losing the case and obtaining nothing.

I find that the settlement will provide sufficient benefit to the class, result in substantial savings of time and money to the Court and the litigants, and further the interest of justice. The class members will receive virtually all of the expected value of their unpaid wages and other damages. Thus, the value of their immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

The parties agree that the settlement is fair and reasonable. After sending the notices approved by the Court, the reaction of the Class has been favorable as evidenced by the absence of objections to the settlement and only a single individual excluded herself from the case. Counsel for both sides are of the opinion the settlement is fair, reasonable, and adequate.

The Court has taken its role as fiduciary seriously and has carefully reviewed all of the available material prior to reaching this decision. The Court reviewed of the claims-made nature of the settlement and noted the absence of a *cy pres* to receive unclaimed funds. Because the class members are receiving virtually all the expected value of the wages and penalties they believed they are owed, the dispersion of the unclaimed funds to class members who filed claims would represent a windfall to those class members. As such, the Court finds the absence of a *cy pres* and unclaimed funds remaining with Defendant are appropriate under these circumstances.

The Court reviewed the case law concerning the confidentiality of wage and hour settlements. Because all of the individuals who were in the applicable class were provided notice of the settlement through the Court-approved notice, any public policy concerns have been alleviated. As such, further dissemination of the settlement amount is unnecessary and I

recommend the Court continue to permit the Parties to maintain the confidential nature of the settlement by redacting settlement amounts from public filings and keeping the record of the final approving sealed.

In addition to their portion of the settlement, the two named Plaintiffs, Nora Candelaria and Kimani Singleton, will each receive $5,000 for their service to the class members. The Court concludes that this is fair and reasonable. The Class Representatives provided a valuable service in protecting the rights of all similarly situated individuals under the FLSA, IMWL, and NMMWA. They expended much time and effort over years prosecuting this litigation, and they actively participated in the litigation and in the negotiations that led up to this settlement.

The allocation of the settlement awards to the class members was based on each individual's length of service, rate of pay, attendance, available penalties, and a uniform estimate of unpaid hours. The allocation is fair, reasonable, and adequate.

Although the settlement agreement permits up to $20,000 for litigation expenses and costs, Plaintiffs seek reimbursement of $12,819.50. These expenses were necessary for the parties to litigate this matter and resolve it. This amount is fair and reasonable.

The third-party administrator's request for $15,536.35 to administer the settlement is also fair and reasonable.

**Class Counsels' Attorneys' Fees and Costs Are Reasonable**

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." In 2003, Rule 23(h) was adopted to more specifically address fee awards in the class action setting.

Rule 23(h) states, in relevant part, that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law .... "  Fed. R. Civ. P. 23(h).

### The Percentage of Fund Method is Appropriate

The settlement of this case has resulted in a common fund.  When counsel obtain a common fund settlement, they may seek a reasonable attorneys' fee from the fund as whole.  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Blum v. Stenson,* 465 U.S. 886, 900 n.l6 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class.").  The rationale behind allowing the Court to award attorneys' fees out of the common fund is that class counsel conferred a benefit to the class as a whole and should be compensated for that benefit.  "A litigant or a lawyer who recovers, preserves, or increases the value of a common fund, thereby benefitting other persons, may be reimbursed for reasonable fees and expenses from the fund as a whole."  *Boeing Co. v. Van Gemert,* 444 U.S. at 478.  Additionally, the Tenth Circuit has stated, "The common fund doctrine 'rests on the perception that persons that obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988) (quotation omitted). Thus, the percentage award results "in a sharing of the fees among those benefitted by the litigation." *Id.* The court awards class counsel a fee from the common fund based upon the court's analysis of the benefit and value the attorney added in obtaining the settlement for the class; the court "weighs the interests of the class in light of class counsel's efforts on their behalf." *In re Copley Pharm., Inc.,* 1 F. Supp. 2d 1407, 1409 (D. Wyo. 1998).

The Tenth Circuit has expressed a preference for determining the reasonableness of a fee award in a common fund case utilizing the percentage of fund method.  *See Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir. 1994); *Brown*, 838 F.2d at 454.  This Court has previously used the

percentage of fund method and rejected the application of lodestar analysis or a lodestar cross check when applying the percentage of fund method. *Barela v. Citi Corp.*, No. 1:11-cv-506-KG-GBW, ECF 93 (D.N.M Sept. 15, 2014) (awarding percentage of fund totaling $133,333.33 in hybrid FLSA and Rule 23 wage and hour case without lodestar cross check) (Gonzales, J.). Other district courts in New Mexico similarly use the percentage of fund method without a lodestar cross-check. *See, Ramah Navajo v. Jewell*, 167 F. Supp. 3d at 1241–42 (D.N.M. 2016); *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1097 (D.N.M. 1999); *Ramah Navajo Chapter v. Kempthorne*, Case No. CIV 90-0957 LH/KBM, 2008 WL 11342943, at *5 (D.N.M. Aug. 27, 2008) (same); *Robles v. Brake Masters Sys., Inc*., Case No. CIV 10–0135 JB/WPL, 2011 WL 9717448, at *19 (D.N.M. Jan. 31, 2011); *Acevedo v. Sw. Airlines Co*., 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *1 (D.N.M. Dec. 10, 2019), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020); *Daye v. Cmty. Fin. Serv. Ctrs., LLC*, 1:14-cv-759-KK-KBM, ECF 195 (D.N.M. August 15, 2019); *J.O. v. Dorsey, et al*., No. 1:11-cv-254-MCA-GBW, ECF 157 (D.N.M. Nov. 19, 2014); *Willett v. Redflex Traffic Systems, Inc.*, No. 1:13-cv-1241-JCH-LAM (D.N.M. Nov. 24, 2016); *Dejolie v. T&R Market, Inc*., No. 1:17-cv-733-KK-SCY (D.N.M. Dec. 10, 2018); *Jones v. I.Q. Data Int'l, Inc*., No. 1:14-cv-130-PJK-GBW, ECF 65; *Yazzie v. Gurley Motor Co*., No. 1:14-cv-555-JAP-SCY, ECF 196 (D.N.M. Oct. 28, 2016). District courts within the Tenth Circuit but outside of New Mexico agree. *Chieftain Royalty Co. v. Marathon Oil Co.*, 2019 WL 7758915, at *9 (E.D. Okla. Mar. 8, 2019) (awarding 40% fee without lodestar cross check, explaining that the "lodestar method and lodestar cross-checks are a wasteful use of resources and are disfavored by the Tenth Circuit.") (collecting cases); *CompSource Oklahoma v. BNY Mellon, N.A.*, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) (same); *Fankhouser v. XTO Energy, Inc.*, 2012 WL 4867715, *3 (W.D. Okla. Oct. 12, 2012); *Droegemueller v. Petroleum Devel.*

*Corp.,* 2009 WL 961539, *4 (D. Colo. Apr. 7, 2009); *Lewis v. Wal–Mart Stores, Inc.,* 2006 WL 3505851, *2 (N.D. Okla. Dec. 4, 2006); *Williams v. Sprint/United Mgmt. Co*., 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007); *Peck v. Encana Oil & Gas, Inc*., , 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018); *Farley v. Family Dollar Stores, Inc*., 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014); *Chavez Rodriguez v. Hermes Landscaping, Inc*., 2020 WL 3288059, at *5 (D. Kan. June 18, 2020); *Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013). I find it is appropriate in this case to use the percentage of common fund method without a lodestar analysis or lodestar cross-check.

### The Percentage Sought by Class Counsel is Reasonable

Class counsel seek 35% of the gross settlement fund as reasonable attorneys' fees. In *Brown,* the Tenth Circuit directed that, in determining what percentage would be reasonable, courts should review the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). *Brown,* 838 F.2d at 454. The *Johnson* factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Ramah I,* 50 F.Supp.2d at 1096 (quoting *Johnson,* 488 F.2d at 717–19). "[R]arely are all of the *Johnson* factors applicable." *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 854 (10th Cir. 1993); *Gudenkauf v. Stauffer Communications, Inc*., 158 F.3d 1074, 1083 (10th Cir. 1998) (trial court need not specifically address each factor in every case). And,

the weight to each factor varies when the court is awarding fees from a common fund.  *Brown*, 838 F. 2d at 456.

I find that the requested attorneys' fee award of 35% of the gross settlement fund is reasonable and in line with similar awards.  "Courts have consistently held that the most important factor within this analysis is what results were obtained for the class." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).  Here, under Defendant's theory, many, if not all, class members would be owed nothing, or at best close to zero.  Class Counsel have secured a class settlement that provides for a reasonable estimate of damages for all class members given the facts of the case and the relative merits of the claims and Defendant's possible defenses.

Moreover, applying the *Johnson* factors demonstrates that the fees and expenses sought by Class Counsel are reasonable.  First, the time and labor involved supports the fees.  In *Brown*, the Tenth Circuit recognized that the differences between common fund cases and statutory fee cases cautioned against importing a formal lodestar requirement—the usual *starting* point in statutory fee-shifting cases—into common fund cases.  Accordingly, the Tenth Circuit recast the nature of the "time and labor" inquiry in common fund cases.  While "time and labor" is a factor to be considered, the court need not conduct a lodestar analysis to assess it.  *See Brown*, 838 F.2d at 456 & n.3; *Chieftain Royalty Co. v. XTO Energy, Inc.,* No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018); *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, *15 n.10 (N.D. Okla. 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by Plaintiff's Counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.").  The litigation has been ongoing for over three years.  During that time, Class Counsel has engaged in extensive informal discovery concerning the merits of the case, prepared and revised voluminous damage models,

attended mediation, negotiated beyond mediation, finalized the settlement agreement, worked with the claims administrator, and engaged in motion practice for preliminary and final approval.

Second, the novelty and difficulty of the questions presented support the fees sought by Plaintiff's Counsel. This case involves complex employment law issues concerning the interplay between Illinois, New Mexico, and federal law, as well as complicated issues relating to class certification.

Because factors three and nine are closely related, the Court analyzes together the skill requisite to perform the legal services properly, and the experience and skill of Class Counsel. I find that Class Counsel have significant experience prosecuting complex wage and hour class actions and collective actions. Class Counsel represent workers across the country in wage and hour matters. Accordingly, the Court finds that Class Counsel's skill and reputation weigh in favor of the requested attorneys' fee and expense award.

Further, the attorneys' fees in this case were contingent. This factor weighs in favor of the requested attorneys' fees award, because "[s]uch a large investment of money [and time] place[s] incredible burdens upon ... law practices and should be appropriately considered." *Feerer v. Amoco Prod. Co.,* 1998 U.S. Dist. LEXIS 22248, at *33; *see also Been v. O.K. Indus., Inc.,* No. CIV-02-285-RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success."). Class Counsel assumed the risk that the litigation would yield no recovery and for years received no compensation for the time and expenses they spent during the litigation.

Four of the *Johnson* factors examine, in different ways, whether the fee request is consistent with the market for legal representation of this type.[1]  Absent Class Members do not have an express, pre-existing attorney-client relationship with Class Counsel.  In determining how much Class Counsel should be paid for the work done on absent Class Members' behalf, it is appropriate to consider what clients agree to pay their lawyers when a direct attorney-client relationship exists.

Here, after arm's-length negotiations with Class Counsel, Plaintiffs agreed Class Counsel would represent Plaintiff on a 40% contingency fee basis.  A fee agreement negotiated at arm's-length in advance is particularly relevant in a contingency case because it reflects the value of the service to be provided before the full difficulty and uncertainty of the case is known and while the risk of a loss still exists.  *See Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (percentage in representation agreement between plaintiff and counsel "provides some market context suggesting that a fee award in this range is a reasonable one.").

Another way of comparing the fee request to the market for comparable legal services is to consider awards in similar cases (*Johnson* factor #12).  I find that the 35% fee request in this case is consistent with what many federal courts in this Circuit have awarded in other class actions, and with what many federal courts across the country have granted in similar wage and hour lawsuits.  *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingency fee basis."); *Cook v. Rockwell Int'l Corp.*, 2017 WL 5076498, at

---

[1] These factors are: (5) the customary fee; (6) whether the fee is fixed or contingent; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*1–2 (D. Colo. Apr. 28, 2017) (explaining forty percent fee falls within acceptable range in Tenth Circuit); *Shaw v. Interthinx, Inc*., 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (finding 1/3 of $6 million dollar fund, or $2 million, in wage and hour case to be "well within the percentage range approved in similar cases") (collecting cases); *Campbell v. C.R. England, Inc*., , 2015 WL 5773709, at *6 (D. Utah Sept. 30, 2015) (awarding 1/3 of $5,000 fund in FLSA collective action). *Blanco v. Xtreme Drilling & Coil Services, Inc*., 2020 WL 4041456, at *5 (D. Colo. July 17, 2020) (awarding 38% fee of $850,000 settlement in wage hybrid action because it was in "line with the customary fees and awards in similar cases"); *Peck*, 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018) (finding 37.5% fee in wage and hour hybrid action to be "well within the range for a contingent fee award") (collecting cases); *Farley*., 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014) (30.3% fee of $2.3 million fund in wage and hour hybrid action); *Whittington,* 2013 WL 6022972, at * 6 (explaining that the fees and costs of 39% of the fund were "within the normal range for a contingent fee award" in wage and hour hybrid class action); *Shaulis v. Falcon Subsidiary LLC*, 2018 WL 4620388, at *2 (D. Colo. Sept. 26, 2018) (finding 1/3 of common fund to be reasonable because the award was similar to fee awards in "similar wage and hour cases in this District"); *Williams*, 2007 WL 2694029, at *6 (awarding 35% fee in employment class action); 4 *Newberg On Class Actions* § 14:6 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Enegren v. KC Lodge Ventures LLC*, 2019 WL 5102177, at *9 (D. Kan. Oct. 11, 2019) (awarding 40% of fund in wage collective action); *In re Bank of Am. Wage & Hour Employment Litig.*, 10-MD-2138-JWL, 2013 WL 6670602, at *3 (D. Kan. Dec. 18, 2013) (awarding 18.25 million plus up to $900,000 in costs from $73 million dollar settlement fund in hybrid wage case).

Additionally, I find that the time and effort that this case has taken and the complexity of the issues would make it undesirable to many attorneys. *See Been v. O.K. Indus., Inc.,* 2011 WL 4478766, at *10 (finding that the time and effort expended in an expensive litigation made a class action undesirable for class counsel). Under Defendant's theory, the Plaintiff and Class Members would be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards potentially available to the Class Members in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Class Members. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. Yet, Defendant could win the case at any step in the process. I accordingly find that this factor weighs in favor of approving the requested award for attorneys' fees and costs.

Applying the relevant factors, I recommend that the Court approve the requested award of attorneys' fees and that such fees and costs will be paid as provided in the Settlement Agreement.

**Interim Order**

I recommend that this settlement be approved on an interim basis and that the approval be considered a final approval after November 25, 2020. The Class Action Fairness Act ("CAFA") requires that defendants who settle any class action in federal court provide notice of the settlement to the federal and relevant state governments. *See* 28 U.S.C. §1711. The notices must be sent (1) within 10 days after the proposed settlement is filed in court (28 U.S.C. §1715(b)), and (2) at least 90 days before final approval is granted (28 U.S.C. §1715(d)). The notices were sent on August

27, 2020.  Consequently, I recommend the settlement be approved on an interim basis at this time, and that the approval be considered final upon expiration of the relevant 90 day CAFA period on November 25, 2020.  If any issues are raised by state or federal officials, then I recommend the Interim Order remain in place until the issues are addressed.

### IV.    **CONCLUSION**

For the reasons set forth herein, I recommend interim/final approval of the settlement and that the Court enter the Order submitted by the Parties as the Interim/Final Approval Order.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

Electronically approved on October 20, 2020 by:

| Respectfully Submitted by: | |
|---|---|
| /s/J. Derek Braziel | /s/ Mark D. Temple |
| J. Derek Braziel | Mark D. Temple |
| **BRAZIEL DIXON, LLP** | Texas State Bar No. 00794727 |
| Texas Bar No. 24087532 | **BAKER & HOSTETLER, LLP** |
| 1910 Pacific Ave., Suite 12001 | 811 Main Street, Suite 1100 |
| Dallas, Texas 75201 | Houston, TX 77002-6110 |
| 214-749-1400 – Office | Telephone: +1 713 751 1600 |
| 214-749-1010 – Fax | Facsimile: +1 713 751 1717 |
| jdbraziel@l-b-law.com | mtemple@bakerlaw.com |
| | |
| Jack Siegel | Adam J. Weiner |
| **SIEGEL LAW GROUP PLLC** | **REED SMITH LLP** |
| Texas Bar No. 24070621 | 10 S. Wacker Drive, 40th Floor |
| 2820 McKinnon, Suite 5009 | Chicago, IL 60606 |
| Dallas, Texas 75201 | Telephone: +1 312 207 2841 |
| P: (214) 790-4454 | Facsimile: +1 312 207 6400 |
| www.4overtimelawyer.com | ajweiner@reedsmith.com |
| | |
| **ATTORNEYS FOR PLAINTIFF** | Randy S. Bartell |
| | **MONTGOMERY & ANDREWS, P.A.** |
| | P.O. Box 2307 |
| | Santa Fe, NM 87504-2307 |
| | Telephone: +1 505 986 2678 |
| | rbartell@montand.com |
| | |
| | **ATTORNEYS FOR DEFENDANT** |